# United States Court of Appeals
## For the First Circuit

No. 16-2271

PAN AM RAILWAYS, INC.,

Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR,

Respondent,

JASON RAYE,

Intervenor.

PETITION FOR REVIEW OF A FINAL ORDER OF THE ADMINISTRATIVE
REVIEW BOARD OF THE UNITED STATES DEPARTMENT OF LABOR

Before

Howard, <u>Chief Judge</u>,
Selya and Lynch, <u>Circuit Judges</u>.

    <u>Andrew J. Rolfes</u>, with whom <u>Robert S. Hawkins</u> and <u>Buchanan Ingersoll & Rooney, P.C.</u> were on brief, for petitioner.
    <u>Dean A. Romhilt</u>, Senior Attorney, Office of the Solicitor, U.S. Department of Labor, with whom <u>Nicholas C. Geale</u>, Acting Solicitor of Labor, <u>Jennifer S. Brand</u>, Associate Solicitor, and <u>Megan E. Guenther</u>, Counsel for Whistleblower Programs, were on brief, for respondent.
    <u>Stephen J. Fitzgerald</u>, with whom <u>Garrison, Levin-Epstein, Fitzgerald & Pirrotti, P.C.</u> was on brief, for intervenor.

---

April 21, 2017

---

**LYNCH**, **Circuit Judge**.  This is a petition for review, in a Federal Railroad Safety Act ("FRSA") whistleblower retaliation action, of an agency decision resulting in the statutory maximum award of punitive damages against a railroad.  The railroad brought charges of dishonesty and insubordination, as well as threats of dismissal, against an injured employee who had filed a complaint under the FRSA with the Occupational Safety and Health Administration ("OSHA"), alleging that he lied in that complaint about precisely how his on-the-job accident happened, based on a purported discrepancy between the complaint and his prior story. An Administrative Law Judge ("ALJ") later found that those charges of dishonesty constituted unlawful retaliation against the employee for filing the OSHA complaint.

We agree with the Department of Labor's Administrative Review Board ("ARB") that substantial evidence supported the ALJ's rejection of the railroad's affirmative defense and the ALJ's decision to impose punitive damages.  The amount of the punitive damages award presents a closer question.  The award seems high, and we might ourselves have chosen a different sum.  In the end, however, we conclude that the ALJ's decision to award punitive damages of $250,000, to punish and deter what he perceived to be a culture of intimidating employees and discouraging them from engaging in protected activity, was within the realm of his discretion.  We deny the petition for review.

- 3 -

I.

A.    The FRSA and Raye's Injury

This story begins with an on-the-job accident in which
Jason Raye, a train conductor for a subsidiary of petitioner Pan
Am Railways, Inc. ("Pan Am"), injured his ankle and missed work as
a result.    The FRSA's employee protection provision forbids
railroad carriers from retaliating against employees who engage in
protected activity, such as reporting a workplace injury or filing
an OSHA complaint.    See 49 U.S.C. § 20109.    Importantly, this case
concerns FRSA retaliation against Raye for filing an OSHA
complaint.

A few weeks before his accident, on October 5, 2011,
Raye noticed a pile of old railroad ties next to a track in a
railyard in Waterville, Maine.    He thought the pile a tripping
hazard and reported it to his manager, Dwynn Williams.    The pile
was not removed before Raye's accident.[1]

On October 24, 2011, during his shift, Raye stepped off
a train onto that same pile of railroad ties and badly sprained
his ankle.    We recount later his testimony about the accident.
Raye called his dispatcher for a ride to the hospital, where Raye

---

[1]    Raye later testified in the ALJ hearing that Pan Am had
not disciplined anyone, as far as he knew, for failing to remove
the dangerous pile from the railyard in the weeks between Raye's
initial report and his accident.    Pan Am has not refuted that
testimony.

was diagnosed with the sprain. Williams visited Raye at the hospital, and Raye explained that he had "rolled [his] ankle on the same ties that [he had] turned in three weeks ago." In response, Williams said that Raye should "probably expect a [disciplinary] hearing" in the wake of the injury.

Raye had two scheduled days off after his injury, but he needed three days to recover, so he missed a day of work. That missed day required Pan Am to report Raye's injury and the injury's cause to the Federal Railroad Administration ("FRA"). See 49 C.F.R. § 225.19(d)(3)(i). When Raye returned to work on October 28, 2011, his superintendent, Jim Quinn, learned about the injury and the missed day. Quinn told Raye that the missed day "change[d] everything" and that "[t]here w[ould] probably be a hearing . . . for that FRA reportable injury, for missing a day."

B.  <u>First Pan Am Disciplinary Proceeding Brought Against Raye for His Alleged Safety Violation</u>

On November 1, 2011, Raye received a Notice of Hearing from Pan Am, signed by Williams. The notice alleged that Raye had violated Pan Am Safety Rule P-76, which provides that "[b]efore getting on and off [a train], [employees must] carefully observe ground condition and be assured of firm footing." At the November 11, 2011 hearing, Raye testified that he had stepped down from the train safely and cautiously, but had nonetheless lost his balance on the unstable pile of ties. Raye also testified that after

rolling his ankle he had "caught [him]self" and sat down on the ground rather than falling over.

On November 28, 2011, John Schultz, Pan Am's Vice President of Transportation, sent Raye a letter stating that Raye had failed to assure himself of firm footing before stepping onto the pile of ties. The letter itself "serve[d] as discipline in the form of a formal [r]eprimand and . . . a copy of it w[as] . . . placed in [Raye's] personal file."

C.    Raye's OSHA Complaint, Second Pan Am Disciplinary Proceeding for Raye's Alleged Dishonesty, and Raye's Amended OSHA Complaint Charging Retaliation

Raye retained a lawyer, who drafted and submitted a typed complaint to OSHA on December 6, 2011, without Raye first reviewing or signing it. This initial complaint accused Pan Am of violating the FRSA by retaliating against Raye, both for reporting a safety hazard and for reporting his injury. See 49 U.S.C. § 20109(a)(4), (b)(1)(A). The typed OSHA complaint was consistent with Raye's testimony at the earlier Pan Am disciplinary hearing, with one exception: the complaint stated that Raye "fell hard to the ground" at the time of the injury, rather than that he sat down on the ground.

On December 12, 2011, OSHA sent Pan Am a copy of Raye's complaint and sought Pan Am's response to the allegations. At the request of Pan Am's legal and human resources departments, Schultz reviewed the OSHA complaint -- which he reasonably believed had

- 6 -

been drafted by Raye himself -- and thought there was a "major discrepancy" between the complaint's statement about Raye falling hard to the ground and Raye's prior hearing testimony that he had caught himself and sat down on the ground after stumbling.  That discrepancy, Schultz said later, caused Pan Am to make a "collective determination" to bring a second set of disciplinary charges against Raye.  Pan Am made that determination without any effort to first ask Raye about the purported inconsistency.

On December 23, 2011, Pan Am sent Raye a second Notice of Hearing, which directed him to appear at a second disciplinary proceeding, levied several serious charges against him, and threatened him with termination.  OSHA and the ALJ would later find that retaliation against Raye for filing the initial OSHA complaint was a contributing factor in Pan Am's decision to bring these new charges.  The notice alleged that Raye had "[p]rovid[ed] false statements to [Pan Am] and/or a government agency, in connection with [his] description as to how the incident . . . on October 24, 2011, took place."  That purported dishonesty, the notice further alleged, violated two Pan Am Safety Rules: (1) Rule PGR-C, which threatens employees with dismissal if they commit "act[s] of insubordination, hostility, or willful disregard of [Pan Am's] interests" or if they "conduct themselves in such a manner that [Pan Am] will . . . be subject to criticism or loss of good will"; and (2) Rule PGR-L, which threatens employees with

dismissal if they are "dishonest, immoral, vicious, quarrelsome, and uncivil in deportment or . . . careless of the safety [of] themselves or of others."  The notice did not specify which of Raye's statements about the accident were alleged to have been "dishonest" or "insubordinat[e]."

Raye's lawyer, in response, amended the OSHA complaint on December 27, 2011, to include an allegation that the second set of charges amounted to Pan Am retaliating against Raye for having filed the original OSHA complaint.  See 49 U.S.C. § 20109(a)(3). He enclosed the new Notice of Hearing and asserted to OSHA that Pan Am was "clearly bringing these additional charges in retaliation for . . . the original [OSHA] complaint."

The second Pan Am disciplinary hearing, addressing the new charges of dishonesty and insubordination, took place on January 4, 2012.  Raye explained that his lawyer had written the statement in the OSHA complaint, that he himself had not been aware of the statement's contents before the lawyer submitted the complaint to OSHA, that the discrepant portion of the statement was wrong, and that his testimony at the first hearing had been correct.  The facts in the OSHA complaint, he confirmed, were otherwise accurate and consistent with his prior hearing testimony.  Finally, he testified that no one from Pan Am had approached him informally at any time before issuing the second

Notice of Hearing to discuss the purported "major discrepancy" that Schultz had identified.[2]

In a letter dated January 13, 2012, Pan Am informed Raye that "the charges [of rule violations] ha[d] not been sustained" and that no disciplinary action would be taken as a result of the second hearing.

On August 14, 2013, OSHA rejected Raye's claim that Pan Am had retaliated against him for reporting his injury or for reporting a safety hazard, finding that Pan Am had "provided clear and convincing evidence that it would have reprimanded [Raye] if it had observed the incident, even if no injury resulted."

OSHA agreed with Raye, however, that Pan Am had unlawfully retaliated against him by bringing the second set of charges after he filed the original OSHA complaint. Pan Am had "not provided clear and convincing evidence," OSHA found, "that it would have taken the same adverse action even if [Raye] had not engaged in protected activity." OSHA further noted that "once a

---

[2]    The ALJ later found, despite Pan Am's claim that its officials could not have spoken informally with Raye because of the collective bargaining agreement with Raye's union, that nothing in that agreement prohibited an informal conversation. This was one of several instances in which the ALJ found Schultz's testimony before him to be less than truthful. Further, the ALJ evidently accepted Raye's unrebutted testimony that on another occasion Quinn, the superintendent, had called him in for an informal conversation to learn more about the circumstances of a workplace accident. On that occasion, Pan Am did not formally charge Raye with a safety violation until after the informal conversation.

FRSA allegation has been made to OSHA, it is OSHA's responsibility, not [an employer's], to establish the truth of assertions made by both parties."

D.    ALJ and ARB Proceedings

On September 12, 2013, Pan Am objected to OSHA's finding of retaliation[3] and requested a de novo hearing before an ALJ. That hearing took place on February 24, 2014.  The ALJ heard live testimony from Raye and from Schultz.  Pan Am sought to introduce several exhibits documenting past instances of employee discipline, which it characterized as comparator evidence supporting its affirmative defense that it would have taken the same action even absent Raye's protected activity.  The ALJ admitted the documents about which Schultz could testify from personal experience, but excluded others for which Pan Am could provide no explanation or context.

The ALJ issued his Decision and Order on June 25, 2014. First, he found that Raye's protected activity -- filing an OSHA complaint -- had been a contributing factor in Pan Am's decision to charge Raye with dishonesty and to hold a second hearing.  Next, he rejected Pan Am's affirmative defense, holding that Pan Am had not "prove[d] by clear and convincing evidence that it would have

---

[3]     OSHA's finding that the first Pan Am hearing and subsequent reprimand did not constitute unlawful retaliation against Raye was not appealed.

taken the same action absent [Raye's] protected activity." He dismissed as inadequate Pan Am's proffered comparator evidence because those instances of investigation and discipline were not fairly comparable to Raye's circumstances.

Finally, the ALJ turned to what relief was "necessary to make [Raye] whole," 49 U.S.C. § 20109(e)(1), and awarded Raye $10,000 in damages for emotional distress. He also imposed $250,000 in punitive damages -- the maximum amount that the FRSA allows, see id. § 20109(e)(3) -- because Pan Am had "utilized the [disciplinary] process to intimidate and discourage protected activity, not only by Raye, but [by] other employees of Pan Am as well."

Pan Am appealed the ALJ's decision to the ARB, which affirmed. The ARB held that substantial evidence supported the ALJ's determination that Pan Am had failed to prove its affirmative defense by clear and convincing evidence. It also found no abuse of discretion in the award of $250,000.

II.

The scope of our review of Pan Am's petition for review of the ARB's final order is limited by the Administrative Procedure Act. See 49 U.S.C. § 20109(d)(4) (cross-referencing 5 U.S.C. §§ 701-706); R & B Transp., LLC v. U.S. Dep't of Labor, Admin. Review Bd., 618 F.3d 37, 44 (1st Cir. 2010). Accordingly, we must deny the petition "unless [the ARB's] legal conclusions are

- 11 -

arbitrary, capricious, or otherwise not in accordance with law, or its factual conclusions are unsupported by substantial evidence." R & B Transp., 618 F.3d at 44 (quoting Clean Harbors Envtl. Servs., Inc. v. Herman, 146 F.3d 12, 19 (1st Cir. 1998)).  The substantial evidence standard is a hurdle "notoriously difficult to overcome on appellate review."  Vieques Air Link, Inc. v. U.S. Dep't of Labor, 437 F.3d 102, 104 (1st Cir. 2006) (per curiam) (quoting Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003)).[4]

        Pan Am's petition raises two issues.  First, Pan Am argues that it established in the ALJ proceeding, by clear and convincing evidence, its affirmative defense that it would have issued the second Notice of Hearing and threatened Raye with termination for dishonesty even if he had not engaged in protected activity by filing an OSHA complaint.  Second, Pan Am argues that the $250,000 punitive damages award was unsupported by substantial evidence and clearly excessive.  Pan Am does not challenge the abuse of discretion standard of judicial review as to the amount of punitive damages.

_____

        [4]     With respect to findings of fact, "it is the ALJ's unique prerogative in the first instance to 'draw inferences and make credibility assessments, and we may not disturb his judgment and the [ARB's] endorsement of it so long as the [ALJ's] findings are adequately anchored in the record.'"  Bath Iron Works, 336 F.3d at 56 (quoting Bath Iron Works Corp. v. Dir., Office of Workers Comp. Programs, U.S. Dep't of Labor, 244 F.3d 222, 231 (1st Cir. 2001)).

A.  Rejection of Pan Am's Affirmative Defense that It Would Have Charged Raye with Dishonesty Even Absent His Protected Activity

Under the FRSA, an employee alleging retaliation bears the initial burden of demonstrating that his protected activity "was a contributing factor in the unfavorable personnel action alleged in the complaint."[5]  49 U.S.C. § 42121(b)(2)(B)(iii); see id. § 20109(d)(2)(A).  Pan Am does not dispute that Raye met his "contributing factor" burden and shifted the burden to Pan Am to prove, "by clear and convincing evidence," that it "would have taken the same unfavorable personnel action in the absence of [the protected activity]."  Id. § 42121(b)(2)(B)(iv).[6]

Pan Am takes two tacks in challenging the ALJ's rejection of its affirmative defense.  First, it argues that the ALJ abused his discretion by excluding material comparator evidence.  Second, it argues that the mere fact of discrepancy between the two accounts of Raye's accident is sufficient to meet Pan Am's burden of proof.

---

[5]    Pan Am has abandoned one of its original theories: that there was no "adverse action," as a matter of law, given that Raye was not punished after the second disciplinary proceeding.

[6]    The "clear and convincing evidence" standard is more demanding than a preponderance standard and requires "proof that the [employer's] assertions are 'highly probable.'"  United States v. Volungus, 730 F.3d 40, 46-47 (1st Cir. 2013) (quoting Colorado v. New Mexico, 467 U.S. 310, 316-17 (1984)).

1.  <u>Pan Am's Comparator Evidence</u>

Pan Am faults the ALJ for excluding certain notices of investigation and records of arbitration awards, which Pan Am sought to introduce as additional comparator evidence.  There was no abuse of discretion in the ALJ's decision to exclude those exhibits.  Pan Am contends that the exhibits were admissible as business records or public records.  <u>See</u> 29 C.F.R. § 18.803(a)(6), (a)(8).  But that argument misses the point: the KALJ excluded the exhibits not because they were hearsay, but rather because their probative value was minimal without a witness to explain their significance and in light of the exhibits already in evidence.  <u>See</u> <u>id.</u> § 18.403.  The ALJ was within his discretion in concluding that the proffered exhibits, without additional context, should not be admitted.

In any event, the record makes clear that any error was harmless.  The excluded exhibits, on their face, merely suggested that Pan Am may have previously disciplined employees for false statements.  The key issue, however, was whether the false statements in those instances were of a similar character as the discrepancy that Pan Am chose to investigate formally and aggressively in Raye's case.  The excluded exhibits do not themselves describe circumstances that are reasonably comparable to Raye's, and no other evidence makes them so.  There is no reason to believe that the ALJ would have afforded the exhibits any

weight, or changed his mind, had they been admitted.  See R & B
Transp., 618 F.3d at 46 (finding "any purported [evidentiary] error
. . . harmless in light of the other evidence" considered by the
ALJ); Mekhoukh v. Ashcroft, 358 F.3d 118, 130 (1st Cir. 2004) ("The
evidence [not considered] contains no information that materially
affects the outcome of [petitioner's] claims.").

      Pan Am also argues that the comparator evidence the ALJ
did admit was sufficient to meet its burden to prove its
affirmative defense.  But those disciplinary records, too, had
only indirect relevance to Raye's case: they involved patently and
materially false hearing testimony by the employees, rather than
mere discrepancies, and the notices given there to the employees
did not threaten to fire them after the employees had made a
statement to OSHA.

    2.   Rejection of Pan Am's Purportedly Non-Retaliatory Motive
        for Charging Raye with Dishonesty

      Pan Am contends that the two accounts of Raye's accident
were "fundamentally irreconcilable" and that the discrepancy gave
Pan Am a non-retaliatory motive to charge Raye with dishonesty-
related violations and to hold a second formal hearing.  But the
ALJ had substantial evidence and reason not to credit Pan Am's
explanation.

      First, the ALJ was entitled to evaluate the hearing
testimony of Schultz, Pan Am's key decision maker, and decide

- 15 -

whether Schultz's explanation was sufficiently credible. There were reasons to doubt Schultz's credibility. In his initial testimony, he mischaracterized the description of the accident contained in the OSHA complaint. Only on cross-examination did he admit his mischaracterization. The ALJ also reasonably gave weight to Schultz's failure simply to ask Raye about the perceived discrepancy before rushing to charge Raye formally with dishonesty and to threaten him with the loss of his job. Again, the ALJ rejected Pan Am's purported reasons for its failure to do so.

Although there may be room for disagreement about the significance and extent of the discrepancy, we are not the triers of fact. Substantial evidence supported the ALJ's conclusion that Pan Am overstated the significance of the discrepancy and failed to prove that it would have taken the same adverse actions if Raye had not filed the OSHA complaint.

Pan Am argues that the ALJ ignored an ARB precedent requiring him to consider "the proportional relationship between the adverse actions and the bases for the actions." See Speegle v. Stone & Webster Constr., Inc., ARB Case No. 13-074, 2014 WL 1758321, at *7 (Dep't of Labor Admin. Review Bd. Apr. 25, 2014). That argument is flatly contrary to the record, which reflects that the ALJ in this case properly took proportionality into account as circumstantial evidence, as well as "the temporal proximity between the non-protected conduct and the adverse

actions." Id. As Speegle clearly states, proportionality is only
one of several pieces of circumstantial evidence that an ALJ "can"
consider. Id.

B.    No Abuse of Discretion in Punitive Damages Award

        The remaining issue is whether the $250,000 punitive
damages award was unsupported by substantial evidence, contrary to
law, or clearly excessive. We conclude that the ALJ's choice of
award was not an abuse of discretion.

    1.    Background

        An employee who prevails on a FRSA retaliation claim
"shall be entitled to all relief necessary to make the employee
whole," 49 U.S.C. § 20109(e)(1), and the relief "may include
punitive damages in an amount not to exceed $250,000," id.
§ 20109(e)(3).[7] The purpose of punitive damages, both in the FRSA
and elsewhere, is twofold: "to punish [a wrongdoer] for his
outrageous conduct and to deter him and others like him from
similar conduct in the future." Smith v. Wade, 461 U.S. 30, 54
(1983) (quoting Restatement (Second) of Torts § 908(1) (1979)).

        When Congress amended the FRSA in 2007 to expand anti-
retaliation protections and shift enforcement authority from

---

        [7]    Prevailing plaintiffs are also entitled to "compensatory
damages, including compensation for any special damages sustained
as a result of the discrimination, including litigation costs,
expert witness fees, and reasonable attorney fees." See 49 U.S.C.
§ 20109(e)(2)(C).

arbitrators to the Department of Labor, it said that it was aiming to address and rectify railroads' history of systematically suppressing employee injury reports through retaliatory harassment and intimidation. See Araujo v. N.J. Transit Rail Operations, Inc., 708 F.3d 152, 156–57 & n.3, 159 & n.6 (3d Cir. 2013) (discussing the legislative history of the 2007 FRSA amendment). Congress's amendment not only gave the Department of Labor enforcement authority but also put stronger tools in the Department's toolbox: the statute's punitive damages cap rose from $20,000 to $250,000.[8] Compare 49 U.S.C. § 20109(c) (2006) (pre-amendment), with id. § 20109(e)(3) (2012) (post-amendment).

As Pan Am acknowledges, the test for awarding punitive damages in FRSA whistleblower cases is the same common law test that Smith used for actions under 42 U.S.C. § 1983. See Worcester v. Springfield Terminal Ry. Co., 827 F.3d 179, 182–84 (1st Cir. 2016) (applying Smith standard); BNSF Ry. Co. v. U.S. Dep't of Labor, 816 F.3d 628, 642 (10th Cir. 2016) (same). We have described the Smith test as a "reckless disregard standard," Worcester, 827 F.3d at 183, meaning that punitive damages are warranted if a railroad acted "[w]ith malice or ill will or with

---

[8]    Post-amendment jury awards of punitive damages, under the FRSA, are reduced to this statutory cap if necessary. See, e.g., Barati v. Metro-North R.R. Commuter R.R. Co., 939 F. Supp. 2d 143, 145 (D. Conn. 2013) (granting motion to reduce $1,000,000 jury award of punitive damages to $250,000).

knowledge that its actions violated federal law <u>or</u> with reckless disregard <u>or</u> callous indifference to the risk that its actions violated federal law," <u>id.</u> at 182 (alteration and emphases in original).

### 2. An Award of Punitive Damages Was Warranted

Substantial evidence in the record supports the ALJ's conclusion that punitive damages were warranted on account of Pan Am's "reckless or callous disregard for [Raye's] rights, as well as intentional violations of federal law." <u>Smith</u>, 461 U.S. at 51. The ALJ specifically found that Pan Am had willfully retaliated against Raye for filing an OSHA complaint and that it had "consciously disregarded Raye's statutorily-protected rights under the FRSA, and in fact intentionally interfered with the exercise of those rights." Those were reasonable inferences, in light of the facts developed at the ALJ hearing.

### 3. A Statutory-Maximum Award of Punitive Damages Was Not Clearly Excessive

The evidence on which the punitive damages award rests does not pertain solely to how Pan Am treated Raye. The ALJ's opinion cites several additional reasons, all supported by substantial evidence. For example, Pan Am exaggerated the seriousness of the supposedly "major" discrepancy, both in the second Notice of Hearing and in Schultz's testimony before the ALJ, and Schultz's dissembling gave reason to be concerned about

Pan Am's culture.  Pan Am's choice to charge Raye with dishonesty
was made not by a low-level manager but by its corporate legal
department and a Vice President.  Pan Am chose not to make use of
OSHA's built-in factfinding process to address the discrepancy,
and instead threatened Raye with the dishonesty charges.  Finally,
Pan Am appeared to the ALJ to have a corporate culture more focused
on retaliation than on safety: the ALJ found that 99% of injuries
at Pan Am that were reportable to the FRA triggered formal charges
against the injured employee, in stark contrast to Pan Am's
apparent nonchalance about its own responsibility to improve
safety and remove hazards like the one Raye reported.

        The difficult question is not whether there should have
been a punitive damages award at all, but whether Pan Am has shown
that a $250,000 award, set at the statutory maximum, was an abuse
of discretion.  See Cooper Indus., Inc. v. Leatherman Tool Grp.,
Inc., 532 U.S. 424, 432-33 (2001) (federal appellate courts
generally review the size of a punitive damages award for abuse of
discretion, assuming that "no constitutional issue is raised" and
that the award was within statutory limits).[9]  Our deference to

---

[9]    Pan Am has not challenged the size of the punitive
damages award on constitutional grounds.  Cf. State Farm Mut. Auto
Ins. Co. v. Campbell, 538 U.S. 408, 416-17 (2003) (discussing the
"procedural and substantive constitutional limitations" applicable
to punitive damages awards); Méndez-Matos v. Municipality of
Guaynabo, 557 F.3d 36, 47, 52-56 (1st Cir. 2009) (reducing a jury's
punitive damages award to comport with due process).

the ALJ's choice, to be sure, "is not boundless." United States ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 192 (1st Cir. 2015). Still, in this instance, we will not disturb the $250,000 award.

The Supreme Court has recently reminded us about the reasons for an abuse of discretion standard: "basic principles of institutional capacity counsel in favor of deferential review" when a factfinder's decision "turns not on 'a neat set of legal rules' but instead on the application of broad standards" to the specific and nuanced facts of a particular case. McLane Co. v. EEOC, No. 15-1248, 2017 WL 1199454, at *7 (U.S. Apr. 3, 2017) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)).  In cases like this one, a Department of Labor ALJ's subject matter expertise and experience with whistleblower cases make him or her well suited to make the "discretionary moral judgment[s]," Smith, 461 U.S. at 52, and the "fact-intensive, close calls," McLane, 2017 WL 1199454, at *7 (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 404 (1990)), that must inform any punitive damages determination -- whether under the FRSA or another statute.  Abuse of discretion review is not "no review at all," Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995), but when applying that standard we will refrain from "reweighing evidence and reconsidering facts already weighed and considered by the [ALJ]," McLane, 2017 WL 1199454, at *7 (quoting Cooter & Gell, 496 U.S. at 404).

The ALJ was entitled, within wide limits, to decide how much weight to afford to each of the relevant facts, to assess the credibility of the witnesses at the ALJ hearing, and to make the fact-sensitive and "discretionary moral judgment[s]" that Smith requires. 461 U.S. at 52. The question of excessiveness is a close one, but like the ARB we ultimately see no abuse of discretion in the ALJ's conclusion that a maximum award was warranted here to accomplish the FRSA's goal of punishing and deterring retaliatory conduct by employers like Pan Am.

### III.

We deny Pan Am's petition for review. Costs are awarded against Pan Am.